### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | : |
| v. | :    **CASE NO. 24-cr-00060-TJK** |
| | : |
| | : |
| **RICHARD ZACHARY ACKERMAN** | :    **VIOLATIONS:** |
|                      **Defendant.** | :    **18 U.S.C. § 231(a)(3)** |
| | :    **(Civil Disorder)** |
| | :    **18 U.S.C. § 641** |
| | :    **(Theft of Government Property)** |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Richard Zachary Ackerman ("Ackerman"), with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives

and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside. By shortly after 1:00 PM, the situation at the Capitol had become a civil disorder as that term is used in Title 18, United States Code, Section 231, and throughout the rest of the afternoon the civil disorder obstructed the Secret Service's ability to perform the federally protected function of protecting Vice President Pence.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP

attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. On January 6, 2021, the defendant, Richard Zachary Ackerman, traveled from New Hampshire to Washington, D.C. by car, texting that he "will be going to see the action in these riots/protests" and "[i]f I get shot down there, just remember that I thought highly of you." Once in D.C., the defendant went to the Washington Monument and then walked to the Capitol.

9. While on Capitol grounds, at approximately 2:41 pm, the defendant made his way to the Northwest Plaza where he picked up, and put on, a USCP helmet. The helmet was clearly labeled "U.S. CAPITOL POLICE" with large white capital letters.



10. The defendant moved to the Lower West Terrace of the Capitol building, where a stage for the Presidential Inauguration was being constructed, and where an arched entrance led to a passageway that connects the Lower West Terrace and the interior of the U.S. Capitol building (the "Archway" and the "Tunnel," respectively). At approximately, 2:40 p.m., police officers entered the Tunnel and began to form a protective line with riot shields behind a set of glass inside of the Tunnel. Soon thereafter, numerous rioters entered the Tunnel. Between at least 2:54 p.m. and 4:50 p.m., rioters tried to breach the line of officers and gain entry to the interior of the Capitol building. Several rioters threw objects at the officers and used poles to strike at the officers. By approximately 4:24 p.m., officers were attempting to expel the rioters from the Archway.

11. By approximately 4:28 p.m., the defendant joined the large group of rioters near the Tunnel and had positioned himself near the entrance of the Archway. While there, the defendant saw rioters fighting with officers and felt the effects of OC spray. At one point, the defendant picked up an apparently empty water bottle and threw it at officers in the Tunnel.



The defendant was not forced into the group of rioters near the entrance to the Tunnel by other rioters, and his conduct was not involuntary, an accident, or a mistake. The defendant's conduct impeded the efforts of the USCP and Metropolitan Police Department officers to protect the Capitol.

12. The defendant traveled back to New Hampshire on the morning of January 7, 2021. He texted that he "got maced really bad," that he "was right there, in the eye of it," and that he "was right in the doorway of the building." He also texted that he "stole a SWAT Team officers helmet," called the helmet "a war trophy." In a text on January 7, 2021, the defendant stated "I was there yesterday…& the helmet is my war trophy from the SWAT team."



13. The FBI recovered the helmet from the defendant's New Hampshire home on June 9, 2022.

### *Elements of the Offense*

14. The parties agree that Civil Disorder in violation of 18 U.S.C. §231(a)(3) (Count One) requires the following elements:

    a. First, the defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers;

    b. Second, at the time of the defendant's act, the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder; and

    c. Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected the conduct or performance of any federally protected function.

15. The parties agree that Theft of Government Property in violation of 18 U.S.C. § 641 (Count Two) requires the following elements:

    a. First, the defendant knowingly stole, took, or converted to his own use a USCP helmet;

    b. Second, the USCP helmet was property of some value belonging to the United States or any of its departments or agencies; and

    c. Third, the defendant intended to deprive, without right, the United States government of the use or benefit of the USCP helmet.

*Defendant's Acknowledgments*

16. The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he knowingly joined the mob outside of the Tunnel and threw a water bottle into the Tunnel with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers, and that, at the time, those officers were engaged in the lawful performance of their official duties incident to and during a civil disorder. The defendant further admits that the civil disorder in obstructed, delayed, or adversely affected the conduct or performance of any federally protected function. In addition, the defendant admits that knowingly and voluntarily took and converted to his own use a USCP helmet, that the USCP helmet was property of some value belonging to the USCP, and that he intended to deprive, without right, the United States government the use or benefit of the USCP helmet.

*Signatures on the following page*

                            Respectfully submitted,

                            MATTHEW M. GRAVES
                            United States Attorney
                            D.C. Bar No. 481052

By:    *s/ Anna Krasinski*
             Anna Krasinski
             Assistant United States Attorney
             N.H. Bar No. 276778
             Capitol Siege Section
             U.S. Attorney's Office
             District of Columbia
             Telephone No: (202) 809-2058
             Email Address: anna.krasinski@usdoj.gov

## DEFENDANT'S ACKNOWLEDGMENT

I, Richard Zachary Ackerman, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 1/18/2024

Richard Zachary Ackerman
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 1/18/2024

Eric Wolpin
Attorney for Defendant